UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Charlie Strickland, Jr.,

        Plaintiff,                  Court File No. 16-cv-1150 (JNE/LIB)

v.

                              **REPORT AND RECOMMENDATION
                                    AND ORDER**

County Council of Beaufort County, SC, et al.

        Defendants.

This matter came before the undersigned United States Magistrate Judge pursuant to an order of referral, [Docket No. 22], made in accordance with the provisions of 28 U.S.C. § 636(b)(1)(B), and upon the Motion to Dismiss filed by Defendants Beaufort County, Jerri Ann Roseneau, Betty Ann Strickland, Peggy Rivera, and Vanessa Bryan (collectively, "the South Carolina Defendants"), [Docket No. 26]; Plaintiff Charlie Strickland, Jr.'s ("Plaintiff") Motion in Opposition to the South Carolina Defendants' Motion to Dismiss, [Docket No. 33]; and Defendant United States Department of Defense and Accounting Service's ("DFAS") Motion for Extension of Time to File Answer, [Docket No. 45].

For the reasons set forth below, the Court recommends that Defendants' Motion to Dismiss, [Docket No. 26], be **GRANTED** and Plaintiff's Motion in Opposition, [Docket No. 33], be construed as a responsive pleading to the Motion to Dismiss. In addition, because the Court recommends dismissal, the Court orders that Defendant DFAS' Motion for Extension of Time to File Answer, [Docket No. 45], is **DENIED** as moot.

**I.      BACKGROUND AND STATEMENT OF ALLEGED FACTS**

In 1997, Plaintiff, now a Minnesota resident, and his wife, Defendant Strickland, legally separated in South Carolina. (Amend. Compl., [Docket No. 8], 1, 5). A district court in Beaufort County, South Carolina, ordered Plaintiff to pay child and spousal support, and issued income withholding orders to DFAS for the support. (Id.).

On June 7, 2004, the Beaufort County District Court dismissed case number 97-DR-07-555. (Id. at 6). In a letter dated June 14, 2004, the Department of Child Support Services in Ventura County, California, informed Defendant Strickland that it would close its case in 30 days because the child was emancipated and all arrears were paid in full. (Id. at 5). Later that month, Plaintiff received a letter from Rivera, a Finance Office Team Leader with the Beaufort County Family Court, telling him that case 97-DR-07-555 was closed. (Id. at 6).

Plaintiff alleges that Rivera, Roseneau, and Bryan, all employees of Beaufort County, failed to notify DFAS that the case was closed, so Defendant DFAS continued to withhold part of Plaintiff's income. (Id.). In September 2015, Rivera submitted an amended income withholding order to DFAS, removing the arrears payment from the support order. (Id.). In February 2016, Plaintiff contacted Roseneau and inquired about the status of case 97-DR-07-555; in response, he received a letter signed by Bryan, stating the case was active. (Id. at 7). In April 2016, a DFAS representative told Plaintiff that the withholding order of September 2015 was to withhold money for child support payments. (Id.).

II.     PROCEDURAL HISTORY

On May 2, 2016, Plaintiff filed pro se a Complaint in the federal district court for the District of Minnesota, bringing suit against the South Carolina Defendants. (Compl., [Docket No. 1], 1-3). Generally alleging both federal question and diversity jurisdiction, Plaintiff asserted that after case 97-CR-07-555 was closed, Roseneau, Bryan, and Rivera conspired to issue

9:17-cv-00067-PMD     Date Filed 10/28/16     Entry Number 51     Page 3 of 10

fraudulent income withholding orders in order to obtain money for their friend Defendant Strickland. (Id. at 5). Plaintiff also argued that the County Council of Beaufort County was grossly negligent in failing to notify DFAS that the case was closed. (Id.).

Plaintiff asserted that the South Carolina Defendants' actions violated the Constitutional prohibition against taking property without due process; violated the Equal Protection Clause of the Fourteenth Amendment by failing to comply with orders from the family court; violated the Civil Rights Act of 1964 by discriminating against him because of his gender; violated Defendants' duty under federal and South Carolina law "to discharge their duties, without discrimination and to protect plaintiff against unreasonable risks"; misused the legal system; and violated the original support order. (Id. at 6-7). Plaintiff requested compensatory damages of over $1,000,000.00; reimbursement of his legal costs and fees; punitive damages; and injunctive relief. (Id. at 7-8).

After the South Carolina Defendants filed a Motion to Dismiss or Transfer Venue, ([Docket No. 10], and a Memorandum in Support, ([Docket No. 13]), Plaintiff filed an Amended Complaint.[1] ([Docket No. 8]). The Amended Complaint contained the same factual allegations and claims as his original Complaint, named DFAS as an additional defendant, alleged "a malicious abuse of process by an invalid legal proceeding," and argued that DFAS had violated his right to due process and equal protection by failing to properly investigate before complying with the income withholding orders. ([Docket No. 8], 1-8). Plaintiff also added to his request for relief a claim for punitive damages and injunctive relief from DFAS. (Id. at 9-10).

The South Carolina Defendants filed the present second Motion to Dismiss or Transfer Venue and a Memorandum in Support on August 16, 2016. ([Docket Nos. 26 and 28].) They

---

[1] Because Plaintiff filed his First Amended Complaint, the South Carolina Defendants withdrew their first Motion to Dismiss, [Docket No. 10], as moot. (Minute Entry, [Docket No. 44]).

9:17-cv-00067-PMD     Date Filed 10/28/16     Entry Number 51     Page 3 of 10

fraudulent income withholding orders in order to obtain money for their friend Defendant Strickland. (Id. at 5). Plaintiff also argued that the County Council of Beaufort County was grossly negligent in failing to notify DFAS that the case was closed. (Id.).

Plaintiff asserted that the South Carolina Defendants' actions violated the Constitutional prohibition against taking property without due process; violated the Equal Protection Clause of the Fourteenth Amendment by failing to comply with orders from the family court; violated the Civil Rights Act of 1964 by discriminating against him because of his gender; violated Defendants' duty under federal and South Carolina law "to discharge their duties, without discrimination and to protect plaintiff against unreasonable risks"; misused the legal system; and violated the original support order. (Id. at 6-7). Plaintiff requested compensatory damages of over $1,000,000.00; reimbursement of his legal costs and fees; punitive damages; and injunctive relief. (Id. at 7-8).

After the South Carolina Defendants filed a Motion to Dismiss or Transfer Venue, ([Docket No. 10], and a Memorandum in Support, ([Docket No. 13]), Plaintiff filed an Amended Complaint.[1] ([Docket No. 8]). The Amended Complaint contained the same factual allegations and claims as his original Complaint, named DFAS as an additional defendant, alleged "a malicious abuse of process by an invalid legal proceeding," and argued that DFAS had violated his right to due process and equal protection by failing to properly investigate before complying with the income withholding orders. ([Docket No. 8], 1-8). Plaintiff also added to his request for relief a claim for punitive damages and injunctive relief from DFAS. (Id. at 9-10).

The South Carolina Defendants filed the present second Motion to Dismiss or Transfer Venue and a Memorandum in Support on August 16, 2016. ([Docket Nos. 26 and 28].) They

---

[1] Because Plaintiff filed his First Amended Complaint, the South Carolina Defendants withdrew their first Motion to Dismiss, [Docket No. 10], as moot. (Minute Entry, [Docket No. 44]).

argue that the Court should dismiss for lack of personal jurisdiction, dismiss for improper venue or transfer the case to the United States District Court in South Carolina, or dismiss for failure to properly effect service of process. (Defs.' Mem. in Support, [Docket No. 28], 4-15). Plaintiff filed a Motion in Opposition.[2] (Plf.'s Mtn in Opp., [Docket No. 33], 1-2).

Plaintiff also filed a Memorandum of Law in Opposition to Defendants' Motion. (Plf.'s Mem. in Opp., [Docket No. 34]). To support his Memorandum, Plaintiff filed multiple exhibits, a Declaration of Plaintiff, and a Declaration of Plaintiff's current wife, Sheri Strickland. (Plf.'s Exhs. 1-9, [Docket No. 35]; Plf. Dec., [Docket No. 38]; S. Strickland Dec., [Docket No. 39]). The South Carolina Defendants subsequently filed a Reply Memorandum, in which they reiterated their previous arguments and asserted for the first time a lack of subject-matter jurisdiction. (Defs.' Reply Mem., [Docket No. 43], 1). On September 28, 2016, the Court held a motion hearing. ([Docket No. 44]).

### III.     DEFENDANTS' MOTION TO DISMISS [Docket No. 21]

The South Carolina Defendants now move the Court to transfer the current case to the District of South Carolina or dismiss it for lack of personal jurisdiction, improper venue, insufficient service, and/or lack of subject matter jurisdiction. (Motion to Dismiss, [Docket No. 26], 1; Defs.' Mem. in Support, [Docket No. 28], 1-2). Because the question of subject-matter jurisdiction has been raised, the Court addresses it first. See Ashcroft v. Iqbal, 556 U.S. 662, 671 (2009) ("Subject-matter jurisdiction cannot be forfeited or waived and should be considered

---

[2] "Plaintiff's Motion in Opposition to Defendants['] Motion to Dismiss Plaintiff['s] Amended Complaint," [Docket No. 33], is substantively a responsive memorandum to Defendants' Motion to Dismiss. Because Plaintiff is pro se and the Court construes pro se pleadings liberally, the Court treats the Motion as a responsive memorandum. See United States v. Sellner, 773 F.3d 927, 932 (8th Cir. 2014) ("'A document filed pro se is "to be liberally construed."'"). Accordingly, the Court orders that the "motion" be termed. In addition, at the motions hearing, the Court admitted into evidence, without objection, Plaintiff's Exhibit 10, which is now attached to Plaintiff's Motion in Opposition, [Docket No. 33].

9:17-cv-00067-PMD     Date Filed 10/28/16     Entry Number 51     Page 5 of 10

when fairly in doubt."); United States v. Mayo Foundation, 729 F.3d 825, 828 (8th Cir. 2013) (acknowledging that it must address jurisdictional issues first).

Although the Court ordinarily would not consider arguments raised for the first time in a Reply Memorandum, see Local Rule 7.1(c)(3)(B), subject-matter jurisdiction may be raised at any stage of the proceedings, see Murphy v. Aurora Loan Servs., LLC, 699 F.3d 1027 (8th Cir. 2012). In addition, although DFAS did not file a motion to dismiss or join the South Carolina Defendants' motion, if the Court finds it lacks subject-matter jurisdiction over the claims under the Rooker-Feldman doctrine, it may dismiss the claims against DFAS as well. See Johnson v. City of Shorewood, Minn., 360 F.3d 810, 818 (8th Cir. 2004) (stating that because the Rooker-Feldman "doctrine is jurisdictional, it may be raised sua sponte").

## A. Standard of Review

Pro se complaints and pleadings are to be construed liberally. Solomon v. Petray, 795 F.3d 777, 787 (8th Cir. 2015). "'[I]f the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework.'" Id. (citing Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004)). However, "[p]ro se litigants are not excused from complying with court orders or substantive and procedural law." Farnsworth v. City of Kansas City, Mo., 863 F.2d 33, 34 (8th Cir. 1988) (citing Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984)).

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h). Here, the South Carolina Defendants argue that the Rooker-Feldman doctrine deprives the Court of subject matter jurisdiction over the suit.

"The 'basic theory' of the Rooker-Feldman doctrine is 'that only the United States Supreme Court has been given jurisdiction to review a state-court decision,' so federal district courts generally lack subject-matter jurisdiction over 'attempted appeals from a state-court judgment.'" (Citation omitted.) Friends of Lake View Sch. Dist. Incorporation No. 25 of Phillips Cty. v. Beebe, 578 F.3d 753, 758 (8th Cir. 2009). Courts only apply the doctrine to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). The doctrine "does not bar jurisdiction over actions alleging independent claims arising from conduct in underlying state proceedings." Hageman v. Barton, 817 F. 3d 611, 614 (8th Cir. 2016) (citations omitted).

### B. Analysis

According to the South Carolina Defendants, Plaintiff's Memorandum in Opposition to their Motion to Dismiss clarified that "the gravamen of his asserted cause of action [is] that $450 per month was collected from Plaintiff, pursuant to a support order from the Beaufort County Family Court, past the time when Plaintiff believes his obligations under the court's order ceased." (Defs.' Reply Mem. in Support, [Docket No. 43], 2). The South Carolina Defendants claim that consideration of the merits of the current case would involve this Court reviewing and ruling on final state-court judgments, judgments over which the Rooker-Feldman doctrine states federal district courts have no subject matter jurisdiction. (Id. at 2-3). Plaintiff has not directly responded to Defendants' subject-matter jurisdiction argument; instead, he argues that this case is not simply about overpayment of a child support obligation. (Plf.'s Mem. in Opp., [Docket No.

34], 1). He claims it "is about fraud, Malfeasance with malice-in-fact, negligence with civil conspiracy to remove Plaintiff's property without due process of law." (Id.).

The South Carolina Defendants point the Court to Ballinger v. Culotta, 322 F.3d 546, 547-48 (2003), in which the Eighth Circuit determined whether the Rooker-Feldman doctrine barred the district court from considering James Ballinger's complaints that officials of a Missouri state court violated his constitutionally protected rights. (Defs.' Reply Mem. in Support, [Docket No. 43], 2-3). When Ballinger and his wife divorced, Ballinger was ordered to pay child support. 322 F.3d at 547. Ballinger's son later died, and although the Missouri Department of Social Services notified the Circuit Clerk of Clay County, Missouri, that the child support case was closed, Ballinger was informed 2 years later that he owed $15,800 in child support and his next payment was coming due. Id. at 547-48.

Ballinger filed suit in federal court, asserting that county officials had violated his constitutionally protected rights, but the district court found that his claims were time-barred and dismissed the case. Id. at 548. On review, the Eighth Circuit bypassed the question of whether the claims were time-barred and focused on whether the district court had jurisdiction to consider the action "because it in effect constitutes a challenge to a state court decision." Id. The court noted that the Rooker-Feldman doctrine "extends not only to 'straightforward appeals [of state court decisions] but also [to] more indirect attempts by federal plaintiffs to undermine state court decisions.'" Id. (quoting Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000)).

The Eighth Circuit affirmed the dismissal of Ballinger's case, concluding that "Ballinger's claims seek to remedy his alleged injury resulting from [the state court judge's] decisions," so "Ballinger could prevail on his claims only if the district court determined that [the state court judge] wrongly decided the legal questions at issue." Id. Thus, awarding Ballinger's

7

requested relief "'would effectively reverse the state court decision or void its ruling,' [and] the Rooker-Feldman doctrine bars the district court from considering Ballinger's claims." Id.

The South Carolina Defendants assert that the case presently before the Court raises the same concerns. (Defs.' Reply Mem. in Support, [Docket No. 43], 3). They argue that in order for Plaintiff to succeed on his claims, the Court would have to determine that South Carolina family court officials and the County itself wrongly issued child support orders. Although Plaintiff's claims are not yet well-developed, the South Carolina Defendants' argument becomes even more persuasive in light of Cassell v. Cty. of Ramsey, No. 10-cv-4981 (JRT/TNL), 2012 WL 928242 (D. Minn. March 19, 2012), aff'd 490 Fed. Appx 842 (8th Cir. 2012).

Gabriel Cassell filed a pro se complaint in federal district court alleging a conspiracy between his ex-wife, her attorneys, and various Minnesota state judicial officers and county entities to wrongfully initiate a child support and custody proceeding, enter unlawful orders, and enforce those orders. Id. at *1. Cassell sought damages and injunctive relief. Id. at *2. The defendants moved for dismissal on various grounds. Id. The court held:

> A challenge to the enforcement of a state court order is a challenge to the order itself. Here Cassell alleges that the County Defendants withheld income, appeared at child-support hearings, and took other actions pursuant to the initial support obligation order. Because the County Defendants took these actions pursuant to obligations created in state court orders, the Rooker-Feldman doctrine bars this court from ruling on the validity of these actions. Therefore, the Court lacks jurisdiction to consider Cassell's claims against the County Defendants, and it will grant their motion to dismiss.

Id. at *5 (citations omitted).

In addition, the court noted in another portion of its order that

> the Rooker-Feldman doctrine bars Cassell's requests for injunctive relief because Cassell's claim is "inextricably intertwined" with the state child custody and support judgments. The Rooker-Feldman doctrine prohibits federal courts from reviewing state court judgments. Passing on Cassell's requested injunctive relief, specifically his request to order the state district court to vacate orders issued

8

>against him, would necessarily require the Court to review and overturn various state court orders. This the Court lacks jurisdiction to do. Cassell's objection—that the Rooker-Feldman doctrine does not apply because [his ex-wife] and her attorneys perpetrated a fraud on the state court . . .—is overruled because no such exception exists in the Eighth Circuit.

Id. at *4.

Although not controlling, Cassell is so factually similar to the present case that it is extremely persuasive. The district court in Cassell ultimately dismissed the complaint with prejudice. Id. at *7. Here, Plaintiff's claims are all based upon allegations that the various Defendants improperly enforced child support orders, as were the claims in Cassell. At the motions hearing, Plaintiff conceded that all the actions at issue relate to the allegedly erroneous South Carolina family court orders. (September 28, 2016, Motions Hearing Digital Record, 11:48-50). Plaintiff also agreed on the record that the actions by DFAS that Plaintiff challenges are reactions to orders from South Carolina, not independent actions by DFAS. (Id. at 11:52-53).

Plaintiff's success in this Court depends on the Court reviewing and invalidating those orders, which, under the Rooker-Feldman doctrine, it cannot do. Therefore, because the Court has no subject matter jurisdiction, it recommends granting the South Carolina Defendants' Motion to Dismiss, [Docket No. 26], and dismissing the Complaint with prejudice.[3]

Because the Court recommends that the case be dismissed for lack of subject-matter jurisdiction, the South Carolina Defendants' remaining arguments are moot. In addition, because the Court recommends dismissal, DFAS' Motion for Extension of Time to File an Answer, [Docket No. 45], is moot.

### III.     CONCLUSION

---

[3] The Court notes that Plaintiff is not without a remedy. He may still be able to challenge the state court orders regarding child support in the court that issued them in South Carolina.

A. Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motion to Dismiss, [Docket No. 26], be **GRANTED.**

B. For the foregoing reasons, **IT IS ORDERED** that:

1. Plaintiff's Motion in Opposition to Defendants' Motion to Dismiss Amended Complaint, [Docket No. 33], be **TERMED**; and

2. Defendant DFAS' Motion for Extension of Time to File Answer, [Docket No. 45], be **DENIED AS MOOT**.

Dated: October 28, 2016                                        s/ Leo I. Brisbois
                                                                                              The Honorable Leo I. Brisbois
                                                                                              United States Magistrate Judge

## N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.