## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

CHARLIE STRICKLAND, JR.,

      Plaintiff,

v.

COUNTY COUNCIL OF BEAUFORT
COUNTY, SC, JERRI ANN ROSENEAU,
BETTY ANN STRICKLAND, PEGGY
RIVERS, VANESSA BRYAN, and
UNITED STATES DEPARTMENT OF
DEFENSE FINANCE & ACCOUNTING
SERVICE, GARNISHMENT
OPERATIONS,

      Defendants.

Case No. 16-CV-1150 (JNE/LIB)
**ORDER**

      This matter is before the Court on a Report and Recommendation ("R&R") issued by the Honorable Leo I. Brisbois, United States Magistrate Judge, on October 28, 2016. (Docket No. 51.) The R&R issued in response to a motion to dismiss filed by Defendants County Council of Beaufort County, SC, Jerri Ann Roseneau, Betty Ann Strickland, Peggy Rivers, and Vanessa Bryan (the "South Carolina Defendants"). (Dkt. No. 26) Before responding to the Amended Complaint, Defendant United States Department of Defense Finance & Accounting Service, Garnishment Operations ("DFAS") filed a motion for an extension of time to file an answer. (Dkt. No. 45.) The R&R recommends that the South Carolina Defendants' motion to dismiss be granted. (*See* Dkt. No. 51.) Because of this, the R&R denied as moot DFAS's motion for an extension. (*See id.*)

      Plaintiff Charlie Strickland, Jr. ("Strickland") objected to the R&R. (*See* Dkt. No. 54.) The Court therefore conducted a de novo review of the record. *See* 28 U.S.C. § 636(b)(1); Fed.

1

R. Civ. P. 72(b)(3); D. Minn. LR 72.2(b)(3). Based on that review, the Court declines to accept the R&R's recommended disposition and transfers the case to the District of South Carolina.

## I. *ROOKER-FELDMAN* DOCTRINE

The R&R recommends granting the South Carolina Defendants' motion to dismiss on the grounds that the Court lacks jurisdiction under the *Rooker-Feldman* doctrine. (*See* Dkt. No. 51 at 6-10.) This doctrine states that federal district courts lack jurisdiction to consider "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). *Rooker-Feldman* bars a suit that seeks relief from a state-court judgment itself, but not a suit seeking relief from conduct independent of the judgment. *See Hageman v. Barton*, 817 F.3d 611, 614-15 (8th Cir. 2016). After reviewing Strickland's Amended Complaint and other briefs, the R&R concluded that Strickland's "success in this Court depends on the Court reviewing and invalidating [state-court] orders, which, under the *Rooker-Feldman* doctrine, it cannot do." (Dkt. No. 51 at 9.) Strickland objected, stating that his claims do not question the state-court orders relevant to the facts of this case. (*See* Dkt. No. 54 at 5-6.)

Construing Strickland's pleadings liberally and in an effort to discern a permissible claim, as the Court must do when reviewing pro so pleadings, *see Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015), the Court agrees that Strickland's claims do not seek relief from any state-court judgments. Strickland's Amended Complaint revolves around his 1997 domestic relations case in Beaufort County Family Court, South Carolina. In 1997, a Family Court judge issued a temporary order in the case, awarding both child support and temporary spousal support to Strickland's former wife, Betty Ann Strickland. (*See* Amend. Compl. ¶ 7, Dkt. No. 8; Dkt. No.

2

35-8 at 2-6.) Another order followed in 1998. (Amend. Compl. ¶ 7.) It too required Strickland to pay child support and temporary spousal support. (*See* Dkt. No. 14-1 at 15-17.) Then, in 2004, a Family Court judge issued an order dismissing the case because all of Strickland's children were emancipated, and Strickland did not owe any arrearages. (*See* Amend. Compl. ¶ 9; Dkt. Nos. 19-1 at 12, 35-3 at 3.) Strickland does not complain of anything in these orders.

As provided by South Carolina law enabling enforcement of support orders, Family Court clerks issued Income Withholding Notices ("IWNs") to DFAS. (*See* Amend. Compl. ¶ 10; Dkt. No. 19-1 at 9-10). DFAS then withheld funds from Strickland and forwarded the funds to the Family Court. (*See* Amend. Compl. ¶ 10.) Strickland does not complain of this process in general. His complaint is that the IWNs and constant withholding of his income did not stop in 2004, when the case was dismissed. Strickland claims that after the 2004 dismissal, Family Court clerks failed to notify DFAS that the case was closed, and withholding continued for several years. (*See id.* ¶ 10-11.) Then, in 2015, Rivers, a clerk for the Family Court, submitted an amended IWN to DFAS.[1] (*Id.* ¶ 12; *see also* Dkt. No. 35-7 at 2-3.) The amended IWN requested withholding for child support related to the 1997 case. (*See* Amend. Compl. ¶ 14; Dkt. No. 35-7 at 2.) Because the 1997 case was dismissed in 2004, Strickland believed the IWN was issued in error and inquired into the matter. (*See* Amend. Compl. ¶ 13.) In spring 2016, he received correspondence from the Family Court stating that the 1997 case was still "active" and that he was required to continue to pay $367.50 per month. (*Id.*; Dkt. No. 35-4 at 6.)

Strickland asserts that Roseneau, Rivers, and Bryan conspired to deprive him of property without due process, in a discriminatory way, and under color of law by issuing fraudulent and unauthorized IWNs to DFAS. (*See* Amend. Compl. ¶¶ 10, 16-19.) He claims Betty Ann

---

[1] The record suggests that clerks at the Family Court sent another amended IWN to DFAS as recently as August 26, 2016. (*See* Dkt. No. 33-2 at 6.)

Strickland also conspired with these Defendants. (*See id.* ¶¶ 10, 16.) Relatedly, he asserts that DFAS discriminated against him and violated his due process rights by failing to use reasonable care to investigate the IWNs before withholding funds. (*Id.* ¶¶ 15-17.) Finally, he claims that the County Council of Beaufort County discriminated against him and was grossly negligent when it failed to notify DFAS of the 2004 dismissal. (*Id.* ¶¶ 11, 16-17.) These claims do not assert harm caused by orders issued by Family Court judges, but instead harm resulting from IWNs issued without the authority of a judge-signed Family Court order. (*See* Dkt. No. 54 at 3, 6, 7.)

The R&R, in concluding that *Rooker-Feldman* applies to this case, appears to have assumed that IWNs are equivalent to state-court orders, which cannot be overturned by a federal court. *See Minch Family LLLP v. Buffalo-Red River Watershed Dist.*, 628 F.3d 960, 965 (8th Cir. 2010) (analyzing *Rooker-Feldman* in the context of state-court orders); *Riehm v. Engelking*, 538 F.3d 952, 964-65 (8th Cir. 2008) (same). In his objection, Strickland argues that IWNs and judge-signed orders are not equivalent: "Plaintiff always said that the action by the defendants took place after the case was dismissed. The plaintiff believes that the [IWN] and an Order from a Judge(s) are not the same." (Dkt. No. 54 at 8.) One of Strickland's requests for relief also impliedly makes this point: "Order [DFAS] not to honor any request for withholding funds (IWO) received from Beaufort County Family Court, without an attached signed Order from a family Court Judge for a period [of] ten (10) years." (Amend. Compl. at 10.)

A review of South Carolina child and spousal support procedures shows that IWNs are not akin to state-court orders or judgments. Although IWN forms are entitled "Order/Notice to Withhold Income for Child Support" and often referred to as "Income Withholding Orders," they

4

are not signed by judges.[2] (*See, e.g.*, Dkt. No. 19-1 at 9; Dkt. No. 35-1 at 4.) For example, the 2015 IWN was signed by Rivers, a judicial clerk. (*See* Dkt. No. 35-1 at 4.) Furthermore, the South Carolina Code, South Carolina Family Court, and South Carolina Department of Social Services appear to recognize that IWNs are "notices" and not actual court "orders." *See, e.g.*, S.C. Code Ann. § 63-17-1460(A) (2016) ("[T]he clerk of court shall serve a notice to withhold . . . ."); S.C. Judicial Dep't, Clerk of Court Manual, Chapter 7: Case Processing Procedures in the Family Court §§ 7.14.1, 7.14.4 (2016) (describing the withholding form sent to employers as a "Notice to Withhold"), http://www.judicial.state.sc.us/clerkOfCourtManual/displaychapter.cfm?chapter=7; *Employer Frequently Asked Questions*, S.C. Dep't of Soc. Servs., https://www.state.sc.us/dss/csed/employers.htm (last visited Jan. 3, 2017) ("An employer must honor a notice to withhold from any of the following: a Clerk of Court in any of the 46 counties in South Carolina . . . ."); *see also* S.C. Code Ann. § 63-17-1470(D) (2016) (establishing that court orders supersede notices to withhold). In addition, the definition of an "Order for Support" is any "order of a court or an administrative agency" and does not expressly include notices. S.C. Code Ann. § 63-17-1410(7) (2016). Nor would a clerk of court have the authority to enter such an order if the definition was more expansive. *See* S.C. Code Ann. § 14-17-250 (2016); *see also* S.C. Code Ann. § 14-17-260 (2016) (directing clerks to "issue all rules and notices"); S.C. R. Civ. P. 77(c) (providing that clerks may issue "final process to enforce and execute judgments" and grant "other proceedings which do not require allowance or order of the court").

---

[2] Immediate income withholding is authorized under South Carolina law, such that a judge's signature on the IWN is not required in order for clerks to issue IWNs pursuant to any judge-signed support order. S.C. Code Ann. § 63-17-1420(A) (2016). This implies that a clerk's authority to issue IWNs is contingent on the existence of a signed judicial order.

Because IWNs lack the authority of an order, they do not constitute state-court judgments for the purposes of the *Rooker-Feldman* doctrine. *See, e.g.*, *Hageman v. Barton*, 817 F.3d 611, 616 (8th Cir. 2016); *Minch Family LLLP v. Buffalo-Red River Watershed Dist.*, 628 F.3d 960, 965 (8th Cir. 2010); *Riehm v. Engelking*, 538 F.3d 952, 964-65 (8th Cir. 2008). Other courts have also held that performance of clerk duties do not constitute state-court orders or judgments implicating *Rooker-Feldman*. *See, e.g.*, *Snyder v. Nolen*, 380 F.3d 279, 289 n.10 (7th Cir. 2004) (explaining that filing of papers on the docket is a ministerial act and not considered a state-court proceeding for the purposes of *Rooker-Feldman*); *see also Watson v. Lockett*, 379 F. App'x 822, 826 (11th Cir. 2010) (unpublished) (similar). Furthermore, claims seeking relief from erroneous, fraudulent, or unlawful conduct in the course of enforcing a state-court judgment do not implicate *Rooker-Feldman*. *See Banks v. Slay*, 789 F.3d 919, 923 (8th Cir. 2015) (finding that claims complaining of refusal to honor a default judgment were not barred by *Rooker-Feldman*); *Sykes v. Bank of Am.*, 723 F.3d 399, 404 (2d Cir. 2013) ("[Plaintiff] challenges only Defendants' levying against his SSI assets in his bank account in order to enforce the child support order—conduct which is wholly separate from the validity of the underlying order. [Plaintiff's] complaint does not fall within the scope of the [*Rooker-Feldman*] doctrine."); *Minch Family*, 628 F.3d at 965 (holding that claims regarding the defendant's conduct in carrying out a state-court order did not implicate *Rooker-Feldman*); *see also Warner v. Brown*, --- F. App'x ---, No. 16-3136, 2016 WL 6682105, at *1-2 (7th Cir. Nov. 14, 2016) (unpublished) (holding that *Rooker-Feldman* did not apply because the plaintiff complained only that the defendants, among other things, knowingly used outdated child-support orders to garnish his wages and delayed in delivering a new child-support order to those garnishing his wages). Therefore, *Rooker-Feldman*

6

does not foreclose jurisdiction over Strickland's case to the extent he complains of injuries resulting from improperly-issued IWNs.

Given the foregoing, the Court disagrees with the R&R's reliance on *Ballinger v. Culotta*, 322 F.3d 546 (8th Cir. 2003) and *Cassell v. Cty. of Ramsey*, No. 10-CV-4981 (JRT/TNL), 2012 WL 928242 (D. Minn. Mar. 19, 2012). As an initial matter, *Ballinger* predates *Exxon*, which narrowed the scope of the *Rooker-Feldman* doctrine as previously applied by some Courts of Appeals, and any case predating *Exxon* must be cautiously considered in light of *Exxon*'s holding. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005) ("Variously interpreted in the lower courts, the doctrine has sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases . . . ."); *Riehm v. Engelking*, 538 F.3d 952, 964 (8th Cir. 2008). Second, the plaintiff in *Ballinger* asserted that a state-court judgment awarding custody and child support was unconstitutional because the state-court lacked jurisdiction to issue the order. *See Ballinger*, 322 F.3d at 549. Due to this, the Eighth Circuit held that the plaintiff's constitutional claim was "inextricably intertwined" with the state-court judgment because in order for the constitutional claim to succeed, the district court would have to disturb the state-court judgment. *See id.* The R&R likened Strickland's claims to those in *Ballinger* and stated that Strickland's success depends on invalidating state-court orders. (*See* Dkt. No. 51 at 7-9.) But Strickland's success does not depend on the Court invalidating any state-court orders or judgments, so *Ballinger*, even if it survives *Exxon*, does not control.

As in *Ballinger*, the plaintiff in *Cassell* sought relief from child support orders on the grounds that the state court lacked jurisdiction over him and therefore entered "unlawful orders." *See* 2012 WL 928242, at *1-2. The *Cassell* court held that *Rooker-Feldman* barred the plaintiff's claims because ruling on the claims "would necessarily require the Court to review and overturn

7

various state court orders." *Id.* at *4. The opinion observed that, with respect to enforcement of the child support orders, "[a] challenge to the enforcement of a state court order is a challenge to the order itself." *Id.* at *5 (citing *Christ's Household of Faith v. Ramsey Cty.*, 618 F. Supp. 2d 1040, 1044, 1047 (D. Minn. 2009). The R&R pointed to this broad proposition as support for applying *Rooker-Feldman* to Strickland's case. (*See* Dkt. No. 51 at 8-9.)

In *Cassell*, challenge to the enforcement of the state-court order was a challenge to the state-court order itself. However, a challenge to enforcement of a state-court order is not *always* equivalent to a challenge to the state-court order itself. *See MSK EyEs Ltd. v. Wells Fargo Bank, Nat. Ass'n*, 546 F.3d 533, 539 (8th Cir. 2008) ("We have distinguished claims attacking the decision of a state court from those attacking an adverse party's actions in obtaining and enforcing that decision . . . ."). Although the plaintiff in *Cassell* did allege that the enforcement procedures were pursued without authority—like Strickland does in this case—the alleged lack of authority in *Cassell* was related to a jurisdictionally-void state-court order, not the sheer non-existence of a state-court order (as in Strickland's case). In *Cassell*, then, the plaintiff was seeking relief from a state-court judgment by challenging enforcement; as in *Ballinger*, the plaintiff in *Cassell* could only succeed if the state-court order providing for the enforcement was invalid. However, in this case, Strickland merely asserts that Defendants engaged in illegal acts and omissions without authorization by a state-court order. In fact, Strickland's Amended Complaint can be seen as a response to Defendants' failure to honor the 2004 dismissal order. This complained-of conduct is detached from the validity of any state-court orders. A claim based on such conduct is not barred by *Rooker-Feldman*. *See MSK EyEs*, 546 F.3d at 539.

In summary, multiple South Carolina Family Court orders underlie the factual basis of this dispute. However, Strickland's claims against Defendants do not call for any state-court

orders to be vacated, modified, or declared null and void. The claims may call for reading some state-court orders, but not their rejection. *See Minch Family LLLP v. Buffalo-Red River Watershed Dist.*, 628 F.3d 960, 965 (8th Cir. 2010) (holding that when claims called for "interpretation, not rejection, of the state court's order," *Rooker-Feldman* did not apply). Moreover, the Court need not overrule any of the state-court orders underlying this dispute in order for Strickland to prevail. *See Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 173 (3d Cir. 2010) ("[W]hile [plaintiff's] claim for damages may require review of state-court judgments and even a conclusion that they were erroneous, those judgments would not have to be rejected or overruled for [plaintiff] to prevail."). Therefore, this case not barred by *Rooker-Feldman*.

## II. DOMESTIC RELATIONS EXCEPTION TO JURISDICTION

Although *Rooker-Feldman* does not deprive the Court of jurisdiction in this case, the South Carolina Defendants also argue that the Court lacks jurisdiction under the "domestic relations exception." (South Carolina Defendants' Memorandum in Reply to Plaintiff's Response ("Def. Reply Br.") 3, Dkt. No. 43.) However, this exception does not affect the "exercise of federal jurisdiction over the enforcement of an alimony [or child support] decree that ha[s] been properly obtained in a state court of competent jurisdiction." *Ankenbrandt v. Richards*, 504 U.S. 689, 702 (1992). Rather, the exception applies only if plaintiffs "seek the granting or modification of a divorce or alimony [or child support] decree." *Id.*; *see also Wallace v. Wallace*, 736 F.3d 764, 767 (8th Cir. 2013). As stated above, Strickland merely challenges the enforcement of support orders and does not ask for a new support order or modification of any

9

support orders. Therefore, the domestic relations exception does not apply.[3] *See Skyes v. Bank of Am.*, 723 F.3d 399, 404 (2d Cir. 2013) (finding that the exception did not apply when the plaintiff challenged only "the lawfulness of Defendants' actions, pursuant to a state court's child support order, requiring [plaintiff] to pay portions of his SSI benefits toward his child support arrearage").

### III. VENUE AND PERSONAL JURISDICTION

The South Carolina Defendants argued, in tandem with their motion to dismiss, that the District of Minnesota is an improper venue for this case. (*See* South Carolina Defendants' Memorandum in Support of Their Motion to Dismiss ("Def. Br.") 7-11, Dkt. No. 28; Def. Reply Br. 5-7.) In general, venue is proper in the following:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).[4] In this case, not all Defendants are residents of Minnesota. (*See* Amend. Compl. ¶¶ 1, 5.) Nor did a substantial part of the events or omissions giving rise to Strickland's

---

[3] The exception might not apply, in addition to the reasons stated, because Strickland's case is not entirely based in diversity jurisdiction. *See Marshall v. Marshall*, 547 U.S. 293, 307 (2006) (stating that the exception resulted from an interpretation of the diversity statute); *Grazzini-Rucki v. Knutson*, No. 13-CV-2477 (SRN/JSM), 2014 WL 2462855, at *12 (D. Minn. May 29, 2014) ("[T]he domestic relations exception does not apply because it is a limitation on diversity jurisdiction . . . ."), *aff'd*, No. 14-2569 (8th Cir. Mar. 31, 2015).

[4] Proper venue with regards to DFAS, an agency of the United States, is delineated by similar provisions. *See* 28 U.S.C. § 1391(e)(1).

10

claims occur in Minnesota.[5] (*See* Amend. Compl. ¶ 6 ("[T]his occurred primarily in the states of Ohio and South Carolina.").) And, as will be shown, there is another district where venue would be proper. Therefore, the District of Minnesota is an improper venue for this case.

The South Carolina Defendants argued, in the alternative, that the Court should transfer this case due to improper venue. (*See* Def. Br. 10-11; Def. Reply Br. 6-7.) Strickland also acknowledged, at oral argument on the South Carolina Defendants' motion to dismiss, his desire to transfer the case in lieu of dismissal. (*See* Oral Argument at 11:43 AM, Duluth, Courtroom 3 (Sept. 28, 2016).) Under 28 U.S.C. § 1406(a), the Court may transfer a case filed in an improper venue to a proper one if transfer is in the interest of justice. In evaluating the interest of justice, the Court may consider many factors, such as judicial economy, costs to litigate in each forum, obstacles to a fair trial, and the advantages of having a local court determine questions of local law. *See Terra Int'l., Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 696 (8th Cir. 1997).

First, venue is proper in another district: the District of South Carolina. As alleged in the Amended Complaint, a substantial part of the events or omissions giving rise to Strickland's claims occurred in South Carolina. (*See* Amend. Compl. ¶¶ 6-14.) The IWNs were also issued in South Carolina. Furthermore, the South Carolina Defendants are all subject to personal jurisdiction in South Carolina because they either reside there or have minimum contacts with the state. (*See* Amend. Compl. ¶¶ 1, 5; *see also* Dkt. Nos. 14, 15, 16, 18, 29.) Strickland is subject to at least specific personal jurisdiction there because he submitted to the jurisdiction of the Beaufort County Family Court for the domestic relations case. (*See* Dkt. No. 38 ¶ 9.) Therefore, venue is proper in the District of South Carolina.

---

[5] In determining whether a substantial part of the events or omissions giving rise to Strickland's claims occurred in Minnesota, the Court looks to the location of Defendants' relevant activities, not Strickland's activities or the effects that Defendants' conduct had on Strickland in Minnesota. *See Steen v. Murray*, 770 F.3d 698, 703 (8th Cir. 2014).

Second, the interests of justice favor transfer to the District of South Carolina. Some facts may advise against transfer: For example, Strickland declared that litigating the case in South Carolina would present hardship due to his health and his wife's medical conditions. (*See id.* ¶¶ 10, 14.) He also generally declared that South Carolina may be hostile to him. (*See id.* ¶¶ 9, 12.) However, there are several reasons why the interests of justice favor transfer. First, transfer is more likely than dismissal to promote the resolution of Strickland's claims. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962) (stating that the interests of justice favor transfer when dismissal would penalize the plaintiff by "time-consuming and justice-defeating technicalities" (internal quotation marks omitted)). Transfer to the District of South Carolina will also promote convenience for most of the parties and potential witnesses. For example, Betty Ann Strickland also has medical issues and declared that defending herself in Minnesota would cause "extreme hardship." (*See* Dkt. No. 18 ¶¶ 11-12.) Furthermore, the vast majority of witnesses or persons with knowledge concerning this case and evidence relating to the case are located in South Carolina. (*See* Dkt. No. 14 ¶¶ 15-16.) Due to the location of most witnesses and evidence, proceeding in Minnesota would likely require extensive travel to and from South Carolina, causing economic hardship. *See Brimer v. Levi*, 555 F.2d 656, 658 (8th Cir. 1977) (remanding for transfer under 28 U.S.C. § 1406(a) to a district that was more convenient). This hardship may be borne by Strickland after transfer, but resolution of the claims may also provide Strickland with substantial relief. Finally, a federal court in South Carolina is likely to have knowledge of South Carolina's laws and a better understanding of South Carolina courts' judicial proceedings. (*See* Dkt. No. 14 ¶ 17.) Such insight would aid a court in ruling on Strickland's claims.

In addition, the Court does not have personal jurisdiction over the South Carolina Defendants in Minnesota.[6] This fact further supports transfer to the District of South Carolina, a venue that would have personal jurisdiction over all parties. *See Thompson v. Ecological Sci. Corp.*, 421 F.2d 467, 470 n.4 (8th Cir. 1970) (stating that venue transfer, rather than dismissal, is often preferable when personal jurisdiction is lacking); *Am. Registry of Radiologic Technologists v. Bennett*, 655 F. Supp. 2d 944, 947 (D. Minn. 2009); *cf. Polos v. United States*, 556 F.2d 903, 906 (8th Cir. 1977) (finding that transfer to a court that had power to address claims in the action was in the interest of justice).

In order for the Court to exercise personal jurisdiction over the South Carolina Defendants, their "suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). Defendants must have minimum contacts with the State of Minnesota itself, not merely contacts with Strickland, who resides in Minnesota. *Id.* at 1122. "[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant[s'] conduct that must form the necessary connection with the forum State . . . ." *Id.*

Here, the South Carolina Defendants declare they have either never visited Minnesota or did so in a limited fashion decades ago. (*See* Dkt. Nos. 15, 16, 18, 29.) The South Carolina Defendants also do not conduct business in or directed toward Minnesota. (*See id.*) As far as the record shows, they have no systematic or continuous contacts with Minnesota in any way. The

---

[6] Although the existence of personal jurisdiction is not a prerequisite to transfer, the Court agrees with the South Carolina Defendants that it lacks personal jurisdiction over them. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465-66 (1962). The South Carolina Defendants also argued that Strickland failed to properly serve them with process. (*See* Def. Br. 12-15; Def. Reply Br. 7-8.) Without expressing an opinion on this issue, which relates to personal jurisdiction, *see* Fed. R. Civ. P. 4(k), the Court notes that wide latitude is granted to pro se litigants when it comes to service of process and leave to perfect otherwise inadequate service. *See, e.g.*, *Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 876 (D.C. Cir. 1993).

only connection the South Carolina Defendants have to Minnesota is the fact that the IWNs issued by the Family Court led to DFAS's withholding, which affected Strickland in Minnesota. This singular effect is insufficient to confer personal jurisdiction. *See Walden*, 134 S. Ct. at 1125-26 (finding that when the defendants' actions merely caused the plaintiff to lack access to funds in a forum because the plaintiff chose to be in that forum, the defendants did not have a sufficient connection to the forum to satisfy due process). Nothing in the record indicates that the South Carolina Defendants intentionally targeted Strickland *in Minnesota*; rather, the record shows that they sought to collect funds pursuant to the support order, regardless of where Strickland was located. Thus, the relevant conduct at issue in this case created no meaningful connection to Minnesota, and "the mere fact that [the] conduct affected plaintiff[] with connections to the forum State does not suffice to authorize jurisdiction." *Id.* at 1126. Lastly, any correspondence that might have resulted between Strickland and the South Carolina Defendants is insufficient, by itself, to confer personal jurisdiction. *See Porter v. Berall*, 293 F.3d 1073, 1076 (8th Cir. 2002).

For all the foregoing reasons, the District of South Carolina is a proper venue, and the interests of justice favor transfer to that District at this time.

Therefore, IT IS ORDERED THAT:

1. Plaintiff's objections to the Report and Recommendation [Dkt. No. 54] are SUSTAINED IN PART, with respect to opposition to dismissal, and OVERRULED IN PART.

2. The South Carolina Defendants' Motion to Dismiss Plaintiff's Amended Complaint [Dkt. No. 26] is GRANTED IN PART, with respect to the request, in the alternative, to transfer venue, and DENIED IN PART.

[continued on next page]

    3.       This action, Civil No. 16-1150, is TRANSFERRED to the United States District Court for the District of South Carolina. The Clerk of Court is directed to effect the transfer.

Dated: January 6, 2017

                                            s/Joan N. Ericksen
                                            JOAN N. ERICKSEN
                                            United States District Judge